UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BERONNE R. ELIACIN,

                        Plaintiff,

      v.                                       3:09-cv-00438

BARBARA FIALA, et al.,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff commenced the instant action pursuant to the Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., claiming that she was discriminated against on account of her race and ethnicity.  Presently before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12.

**I.**       **FACTS**

According to the Complaint, Plaintiff is a fifty-one year old, married, black woman from Haiti.  At all times relevant hereto, Plaintiff was an employee of the Willow Point Nursing Home, an entity operated by the County of Broome.  On January 28, 2008, a member of Broome County Security went to Plaintiff's house and demanded that she return the $5.00 gift certificate that she was alleged to have stolen from a Willow Point resident.  Plaintiff signed a statement denying the allegations.

Plaintiff contacted the nursing director at Willow Point to inquire about the investigation.  Plaintiff was advised that everyone was investigated and that she should

"come do [her] job." Plaintiff also spoke with Defendants' Scheduler, Charge Nurse, and EEO Compliance Officer, all of whom told Plaintiff that "[e]verything is fine. You have your job."

Plaintiff worked for two more days and then discontinued going to work. Plaintiff stopped going to work because she "could not work under [a] . . . cloud of suspicion." Plaintiff contends that "[i]n the past, white co-workers and nurses had discriminated against [her] similarly by making so many false statements that [she] was forced to complain to nursing coordinators, requesting to be reassigned." According to Plaintiff, she asked that Willow Point investigate who made the "anonymous and false allegations against [her]." Thereafter, Plaintiff's employment was terminated, purportedly for violating the "no call, no show" policy.

Plaintiff insists that she repeatedly called to explain her difficulty in working "in what [she] experienced was a psychologically intolerable environment." Plaintiff alleges that "Defendants, County of Broome and Willow Point Nursing Home, conspired against [her] wrongfully terminating [her] employment to avoid confronting its racially and ethnically biased disciplinary practices."

After filing a charge of discrimination with the EEOC, Plaintiff commenced the instant action against the County of Broome, Willow Point, Broome County Executive Barbara Fiala, and Willow Point Nursing Home Administrator Steven Reagan. By Decision and Order dated October 30, 2009, the Court dismissed the Complaint against the individual Defendants. Presently before the Court is Defendants Willow Point Nursing Home and County of Broome's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12.

## II.      STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. at 1949-50 (internal quotations and citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief."  Id. at 1950 (internal citations and quotation omitted).

## III.     DISCUSSION

Defendant moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12 on the ground that it fails to state a claim upon which relief may be granted.  To assert a prima facie case of discrimination, Plaintiff must allege "1) [she] belonged to a protected class; 2) [she] was qualified for the position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  Terry v. Ashcroft, 336 F.3d 128, 138, 141 (2d Cir. 2003).

Upon review of the Complaint and drawing all reasonable inferences in favor of Plaintiff, the Court finds that the Complaint fails to state a claim that Defendant was discriminated against on account of her ethnicity or race.  According to the Complaint, the

investigation concerning the gift card was purported to be based on an eyewitness complaint. There is no allegation in the Complaint that the eyewitness had a discriminatory motive[1] or that, even if such a motivation was present, Defendant was aware of any such motivation. There also is insufficient allegation that Defendant acted with any discriminatory motive in investigating the allegation concerning the gift card or in denying Plaintiff's demand that they further investigate the accuser.  Any suggestion that the accusation or investigation was because of a discriminatory motive, or that Defendants otherwise acted on account of Plaintiff race or ethnicity, is conclusory, speculative and not a plausible inference from the factual allegations in the Complaint.

Moreover, there is insufficient indication that Defendant undertook adverse action against Plaintiff on account of her race or ethnicity.  "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment."  Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  "An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities."  Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotations and citation omitted).  "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  Id. (internal quotations, alterations, and citation omitted).  Here, the investigation does not constitute a material alteration of the terms and conditions of Plaintiff's employment.  No inference can be made

---

[1] It does not appear that Plaintiff knows the identity of the complainant.

from the allegations in the Complaint that there was any change in Plaintiff's employment as a result of the investigation.  To the contrary, the Complaint alleges that Plaintiff was informed that "everything [was] fine."

Plaintiff ultimately was terminated.  Termination is an adverse employment action.  There is insufficient allegation, however, that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  The Complaint indicates that the termination was purported to be based on Plaintiff's failure to come to work.  Plaintiff admits she stopped coming to work.  These facts together with the lack of any indicia of discriminatory motive by Defendants (discussed above) compel the conclusion that Plaintiff failed to state a claim that she was terminated in violation of Title VII.

To the extent Plaintiff asserts a claim of constructive discharge, such a claim also must be dismissed.  "[A]n employee is constructively discharged when [her] employer . . . intentionally creates a work atmosphere so intolerable that [she] is forced to quit involuntarily ."  Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004).  The allegations in the Complaint, even when read liberally and drawing all inferences in Plaintiff's favor, do not give rise to a plausible inference of a sufficiently intolerable work environment.  Although Plaintiff complains that, in the past, there had been false accusations against her, she does not allege that Defendant made the past accusations or otherwise created any intolerable conditions, she does not identify any adverse consequences that Defendant took against her on account of any false accusations, and she does not allege that Defendant did not accommodate her requests to be transferred.  Plaintiff similarly does not identify any incidents relating to the allegations concerning the gift certificate that are sufficiently severe to render the workplace unworkable.  Plaintiff does not identify any intolerable conditions that

she endured during the two days that she returned to work after the investigation.  The mere

fact that Plaintiff was interviewed about the gift certificate is insufficient to establish an

intolerable work atmosphere.  As previously noted, Plaintiff was advised that she should

report to work, that everything was fine, and that she still had her job.  Accordingly, the

constructive discharge claim must be dismissed.

      Plaintiff also appears to contend that Defendant retaliated against her rather than

meaningfully investigating her "charges" that she was returning to a "racially and ethnically

hostile environment by not granting leave pending investigation."  To prove a charge of

retaliation in violation of Title VII, Plaintiff must show that: (1) she was engaged in a protected

activity; (2) her employer was aware of that activity; (3) she was subject to an adverse

employment action; and (4) there was a causal connection between the protected activity

and the adverse employment action.  See Gordon v. New York City Bd. of Educ., 232 F.3d

111, 116 (2d Cir. 2000).

      Here, it appears from the Complaint that Plaintiff complained to her employer that

the investigation into her involvement in the theft at the nursing home was racially and/or

ethnically motivated.  If true, this would satisfy the first two elements of the claim.  The

Complaint further alleges that Plaintiff was terminated, thereby satisfying the third element of

her claim.  Although the Complaint does not specify the temporal relationship between her

complaint and her termination, it may reasonably be inferred that the two were close in time.

While this claim may not be likely to survive a motion for summary judgment, the Complaint

is sufficient to withstand a motion to dismiss on the retaliation claim.

Lastly, Defendants contends that the Court does not have personal jurisdiction because the Complaint was not properly served upon them.  In light of Plaintiff's *in forma pauperis* status, the Marshal's service was directed to effectuate service upon Defendants.  It appears that service may only have been completed as to the individual Defendants and not the County of Broome.[2]  To remedy this, and in the interests of justice, Defendant County of Broome is instructed to file an affidavit within eleven days of the date of this Order indicating whether it will waive service of process.[3]  If, by the eleventh day, the County does not agree to waive service, the clerk shall then issue a summons and forward it, along with a copy of the complaint and General Order 25, which sets forth a Civil Case Management Plan used by the Northern District of New York, to the United States Marshal for service upon the County of Broome.  If proof of service is not filed within 131 days of the date of this Order, Defendant may move to dismiss the action accordingly.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART. All claims are dismissed against Willow Point Nursing Home.  All claims are dismissed against Defendant County of Broome except the retaliation claim.

---

[2] Because Willow Point Nursing Home is a department of the County of Broome, the County of Broome is the real party in interest and the properly named Defendant.  See N.Y. County Law sec. 51. Accordingly, Willow Point Nursing Home is dismissed as a named Defendant.

[3] The County of Broome is encouraged, but not required, to waive service to avoid unnecessary costs of serving the summons.  See Fed. R. Civ. P. 4(d).

IT IS SO ORDERED.

Dated:   December 8, 2009

Thomas J. McAvoy
Senior, U.S. District Judge