UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BERONNE R. ELIACIN,

                               Plaintiff,

        v.                                              3:09-cv-00438

BARBARA FIALA, et al,

                               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff commenced the instant action pursuant to the Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., claiming that she was discriminated against on account of her race and ethnicity. Presently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.

**I.    FACTS**

        At all times relevant hereto, Plaintiff was a Certified Nursing Assistant at Willow Point Nursing Home, an entity operated by the County of Broome. On January 28, 2008, a member of Broome County Security went to Plaintiff's house and demanded that she return the $5.00 gift certificate that she was alleged to have stolen from a Willow Point resident. Plaintiff signed a statement denying the allegations.

        Plaintiff contacted the nursing director at Willow Point to inquire about the investigation. Plaintiff was advised that everyone was investigated and that she should

"come do [her] job." Plaintiff also spoke with various other of Defendants' employees all of whom told Plaintiff that "[e]verything is fine. You have your job."

Plaintiff worked for two more days and then discontinued going to work. Plaintiff stopped going to work because she "could not work under [a] . . . cloud of suspicion." Plaintiff contends that "[i]n the past, white co-workers and nurses had discriminated against [her] similarly by making so many false statements that [she] was forced to complain to nursing coordinators, requesting to be reassigned." According to Plaintiff, she asked that Willow Point investigate who made the "anonymous and false allegations against [her]." Thereafter, Plaintiff's employment was terminated, purportedly for violating the "no call, no show" policy.

Plaintiff insists that she repeatedly called to explain her difficulty in working "in what [she] experienced was a psychologically intolerable environment." Plaintiff alleges that "Defendants, County of Broome and Willow Point Nursing Home, conspired against [her] wrongfully terminating [her] employment to avoid confronting its racially and ethnically biased disciplinary practices."

After filing a charge of discrimination with the EEOC, Plaintiff commenced the instant action against the County of Broome, Willow Point, Broome County Executive Barbara Fiala, and Willow Point Nursing Home Administrator Steven Reagan. By Decision and Order dated December 8, 2009, the Court dismissed all claims with the exception of the retaliation claim against Willow Point Nursing Home. Presently before the Court is Willow Point's motion for summary judgment seeking dismissal of the Complaint pursuant to Fed. R. Civ. P. 56.

**II.     STANDARD OF REVIEW**

Defendant moves for summary judgment pursuant to Rule 56. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

With these standards in mind, the Court will address the pending motion.

**III.     DISCUSSION**

Defendant first moves for summary judgment on the ground that Plaintiff cannot demonstrate that she had a good faith, reasonable belief that she was engaged in protected activity. To prove a charge of retaliation in violation of Title VII, Plaintiff must show that: (1) she was engaged in a protected activity; (2) her employer was aware of that activity; (3) she was subject to an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000).

To satisfy the "protected activity" element of Title VII, Plaintiff must have had a good faith, objectively reasonable belief that she was opposing an employment practice made unlawful by Title VII. Kessler v. Westchester County Dept. of Soc. Servs., 461 F.3d 199, 210 (2d Cir. 2006); see Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001); Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006) ("the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII."). Plaintiff cannot satisfy this element.

The undisputed facts in the record demonstrate that a theft of a gift card was reported in December 2007. Defendant then investigated the theft complaint. Defendant received an anonymous note identifying Plaintiff as having taken the gift card. The evidence in the record is that "when the Nursing Home receives complaints . . . they are investigated." Minard Aff. at 5. In January 2008, a member of Broome County Security went to Plaintiff's home to investigate. Plaintiff was questioned because an anonymous tip identified her as the culprit. Following that interview, the matter was closed and no action was taken against Plaintiff. By letter dated February 7, 2008, Plaintiff wrote to the County complaining that she

was the victim of "presumptuous investigations, harassment, and persecution based on unsupported, unverified accusations." Essentially, Plaintiff was upset that she was accused of stealing the gift card. Aside from questioning "[h]ow [she] can . . . be certain that employment by the county is not acceptance of a sentence of a civil rights hazard zone," nowhere in that letter did Plaintiff complain of discrimination made unlawful by Title VII. Rather, Plaintiff asks "[h]ow and when [she] will . . . be made whole" and states that she "wish[es] to go back to work[, . . .] [b]ut [that she] cannot go back under the existing conditions."

The fact that Plaintiff was questioned (in the privacy of her own home and not in front of co-workers or nursing home residents) as a result of this tip does not give rise to an inference or suggestion of unlawful activity under Title VII. Moreover, in January 2008, Plaintiff met with Elsie Logan, Defendant's Equal Employment Opportunity Officer to discuss Plaintiff's concerns about being interviewed concerning the theft. Logan advised Plaintiff that she could file a discrimination complaint if she believed Defendant's actions were discriminatory. Plaintiff did not do so. None of these facts reasonably gives rise to the conclusion that Defendant had engaged in unlawful discrimination. Assuming Plaintiff subjectively believed that she was complaining of unlawful discrimination in her February 7, 2008 letter, any such belief was not objectively reasonable in light of the facts and circumstances presented. Peters v. Jenney, 327 F.3d 307, 321 (4th Cir. 2003). Accordingly, it cannot be said that Plaintiff engaged in protected activity.[1]

---

[1] Plaintiff sent another letter dated February 25, 2008 complaining of Defendant's treatment of her. This letter was sent after her termination on February 20 and, therefore, cannot constitute protected activity.

Assuming Plaintiff's February 7 letter qualifies as protected activity and further assuming that Defendant was aware of her complaint, based on the undisputed facts in the record, there is insufficient evidence upon which a fair minded trier of fact could reasonably conclude that any adverse employment action was on account of Plaintiff's protected activity. Under the applicable collective bargaining agreement, "when an employee is absent without authorized leave for a period of five (5) working days, with the exception of a proven illness, such absence shall be deemed to constitute a resignation, effective on the date of the commencement of such absence." Here, Plaintiff was absent without authorization for over five days, thereby implicating this provision of the collective bargaining agreement. See Def.'s Stmnt. Mat. Facts at par. 7 (noting absences on February 5, 6, 7, 8, 12, 13, 14, 15, 18, 19, and 20, 2008). During those days, Plaintiff was welcome to return to work. Minard Aff. at ¶ 5. On February 15, 2008, Minard "encouraged [Plaintiff] to come to work as scheduled. . . ." Id. Prior to termination, Logan also had a conversation with Plaintiff and "advised her to continue coming to work and that her job was not in jeopardy because of the theft allegations." Logan Aff. at ¶ 5. Plaintiff was advised that her failure to return to work could jeopardize her job. Regan Aff. at ¶ 5. Notwithstanding these communications, Plaintiff refused to return to work. See Pl.'s Ex. C ("I wish to go back to work. But I cannot go back under the existing conditions."); Pl.'s Ex. D ("That letter made clear my unwillingness to return without investigation and satisfaction regarding the county's hostile actions against me."). Although there is evidence that Plaintiff spent four hours in the Emergency Room on February 1, 2008 due to high blood pressure, see Pl.'s Ex. C.,[2] there is insufficient evidence

---

[2] Defendant credited Plaintiff with sick time on February 1 and 4 due to her visit to the
(continued...)

she missed work because of any continuing illness or that Plaintiff was ill on February 5, 6, 7, 8, 12, 13, 14, 15, 18, 19, or 20. Id. Accordingly, under the terms of the collective bargaining agreement, Plaintiff was deemed to have resigned. Regan Aff. at ¶ 10; Ex. C. The February 20, 2008 letter sent to Plaintiff states that her employment was terminated due to her violation of the no call/no show policy. This is a legitimate, non-discriminatory reason for Plaintiff's termination. Accordingly, the burden is on Plaintiff to demonstrate pretext or that it was more likely than not that Defendant's decision was motivated, in part, by an intent to retaliate against her. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010). For the reasons discussed, Plaintiff has failed to meet this burden. Although a close temporal relationship can supply the necessary causal link for the purpose of establishing a prima facie case of retaliation, without more, it is insufficient to overcome Defendant's proffered reason for the termination. Id.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's Complaint is DISMISSED IN ITS ENTIRETY.

IT IS SO ORDERED.

Dated: October 17, 2011

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

[2](...continued)
emergency room.